Bruce GILCHRIST, Plaintiff-Appellee,

v.

JIM SLEMONS IMPORTS, INC., and
Jim Slemons, Defendants-Appellants.

No. 85–5813.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1986.

Decided Nov. 6, 1986.

Barbara Lane, Fairfield, McDonald, Sullard, & Lane, Ventura, Cal., for plaintiff-appellee.

Richard Simmons, Dana D. Howells, Musick, Peeler, & Garrett, Los Angeles, Cal., for defendants-appellants.

Before GOODWIN, WALLACE, and KOZINSKI, Circuit Judges.

WALLACE, Circuit Judge:

Jim Slemons Imports, Inc. (Slemons) appeals from a jury verdict in favor of Gilchrist on a claim for age discrimination in violation of the Age Discrimination in Employment Act of 1967 (the Act), 29 U.S.C. §§ 621–634, and on a state law claim for breach of the implied covenant of good faith and fair dealing. Slemons contends that the jury verdict was not supported by the evidence, that the district judge erred in instructing the jury, that the state law claim was preempted, and that the district judge erred in admitting evidence. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, and reverse in part and remand.

I

In November 1971, Slemons hired Gilchrist to be a salesman at its Mercedes dealership in Newport Beach, California. Slemons later promoted Gilchrist to the position of a new car manager. In 1981, Slemons consolidated its used car operation, which was located in Costa Mesa, California, and its Newport Beach new car operation. The consolidated operation was located in Newport Beach.

Six months after the consolidation, Slemons concluded, it contends for business reasons, that it no longer needed two new car managers in order to operate the Newport Beach dealership. Consequently, Slemons terminated Gilchrist. At the time of his termination, Gilchrist was 58 years old. Wright, the new car manager who was not terminated, was also 58 years old. Four months after Gilchrist was terminated, Slemons terminated Wright, allegedly for behavioral problems. Slemons then hired a new car manager who was 35 years old to take Wright's place.

Slemons alleges that when it terminated Gilchrist as a new car manager it offered him a position either as a salesman at its Newport Beach dealership or as chief executive officer of a new company, Overseas Auto Delivery, Inc. (Overseas). Gilchrist contends that no offer of a salesman position was made and that the position with Overseas, a then nonexistent company, did not include pay during the start-up period.

Gilchrist filed an age discrimination claim with the Equal Employment Opportunity Commission (EEOC), which, in April 1983, issued a letter of violation charging Slemons with violating the Act. In May 1983, Slemons offered Gilchrist a position as a salesman at its Honda dealership in San

Juan Capistrano, California. Gilchrist rejected the offer, and alleges that it was conditioned on his waiver of any claim for back pay or lost medical benefits and on his passing a lie detector test. Slemons argues that it did not place any conditions on the offer of employment.

In October 1983, Gilchrist filed suit against Slemons, alleging that Slemons terminated him because of his age in violation of the Act and in violation of a state law implied covenant of good faith and fair dealing. The jury returned a verdict in favor of Gilchrist on both claims, and awarded him $300,000 in actual damages and $300,000 in liquidated damages pursuant to the Act, and, on the state claim, $600,000 in actual damages and $100,000 in emotional distress damages.

The district judge discovered an inconsistency between the jury's award of $300,-000 in actual damages pursuant to the Act and $600,000 in actual damages pursuant to the state law claim. Consequently, Slemons and Gilchrist stipulated that the actual damages "total would be $300,000, whether it be on the [Act] claim or the good faith claim." Gilchrist therefore was awarded $300,000 in actual damages under either the Act or the state law claim, $300,-000 in liquidated damages under the Act, and $100,000 in emotional distress damages under the state law claim.

Slemons moved for a new trial, alleging that the damages were excessive, that the evidence was insufficient to support the verdict, and that the district court committed errors of law. The district judge granted conditionally Slemons's motion for a new trial but only as to damages. In order to avoid a new trial, Gilchrist agreed to a remittitur that reduced the actual damages amount to $225,000, with an equal reduction in liquidated damages, and a reduction in emotional distress damages to $50,000, for a total of $500,000 in damages.

## II

In attacking the Act claim, Slemons contends that Gilchrist failed to establish a prima facie case of age discrimination, that he failed to demonstrate that the business reasons advanced by Slemons for terminating Gilchrist were a pretext for terminating him because of his age, that the district court failed to instruct the jury properly concerning Gilchrist's burden of proof, and that the district court's jury instructions concerning liquidated damages under the Act were contrary to *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (*Thurston*).

### A.

■ To prevail under a disparate treatment theory, Gilchrist must demonstrate that Slemons intentionally discriminated against him based on his age. *See Sakellar v. Lockheed Missiles & Space Co.*, 765 F.2d 1453, 1455 (9th Cir.1985) (*Sakellar*), *cert. denied*, —— U.S. ——, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986). Slemons contends that Gilchrist failed to establish a prima facie case of age discrimination. As we review this case, however, we are not concerned with the specific elements of a prima facie case or with whether they have been met. Requiring a plaintiff initially to establish his case to a prima facie level of proof is merely an orderly way of trying a case in the district court. *Id.* "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (*Aikens*).

■ Similarly, Slemons contended in the district court that Gilchrist was terminated because of legitimate business reasons resulting from the consolidation of the new and used car operations. Gilchrist was entitled to "an adequate opportunity to demonstrate that [Slemons's] proffered reasons were not the true reasons" for his being terminated as a new car manager. *Sakellar*, 765 F.2d at 1455. It was properly left to the jury to decide "which party's explanation of [Slemons's] motivation it be-

lieve[d]." *Aikens*, 460 U.S. at 716, 103 S.Ct. at 1482. Consequently, Slemons's argument that Gilchrist failed both to establish a prima facie case and to prove that its justification for his discharge was pretextual are encompassed within one question—whether the jury erred in finding that Slemons intentionally discriminated against Gilchrist based on his age.

■ We typically review a jury's findings of fact for substantial evidence. *See Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1013–14 (9th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). We are unable to perform such a review here on the Act claim. At the close of evidence, Slemons moved for a directed verdict on the state law claim for breach of the implied covenant of good faith and fair dealing. Slemons did not move for a directed verdict on Gilchrist's Act claim. We have previously concluded that "[t]he ground that there was not substantial evidence to support the jury's verdict ... is not before this court [unless the a]ppellant ..., at the close of the evidence or case, interpose[d] a motion for directed verdict." *Oslund v. State Farm Mutual Automobile Insurance Co.*, 242 F.2d 813, 815 (9th Cir.1957); *see Farley Transportation Co. v. Santa Fe Trail Transportation Co.*, 786 F.2d 1342, 1345–46 (9th Cir.1985) (*Farley Transportation*); *Trans World Airlines, Inc. v. Shirley*, 295 F.2d 678, 678 (9th Cir.1961); *see also* 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2536, at 593 (1971) (Wright & Miller). Because Slemons failed to move for a directed verdict on Gilchrist's Act claim, our review of that claim is limited to Slemons's motion for a new trial. *Farley Transportation*, 786 F.2d at 1347.

■ The district court's denial of Slemons's motion for a new trial on the Act claim "is reversible only if the record contains no evidence in support of the verdict." *Id.* Although the evidence on the record is for the most part circumstantial, we conclude that the record contains some evidence in support of the verdict.

**B.**

■ Slemons contends that the district court also erred in instructing the jury concerning Gilchrist's proper burden of proof on a variety of issues associated with his Act claim. Slemons and Gilchrist, however, jointly submitted all of the jury instructions given by the court. A party who requests an instruction invites any error contained therein and, absent an objection before the instruction is given, waives appellate review of the correctness of the instruction. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 870 (9th Cir.1985) (*999*); *Deland v. Old Republic Life Insurance Co.*, 758 F.2d 1331, 1337 (9th Cir.1985); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 407 (9th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 58, 59, 74 L.Ed.2d 62 (1982); *see also* Fed.R.Civ.P. 51; Wright & Miller, § 2558, at 675–76.

■ Slemons suggests, however, that we review the now challenged jury instructions pursuant to dicta found in *Brown v. Avemco Investment Corp.*, 603 F.2d 1367, 1375 (9th Cir.1979) (*Brown*). In *Brown*, we concluded that the purposes of rule 51 were met, even though a party had not specifically objected to the instructions that were given, because the party had proposed alternative instructions and the district court was fully aware that the party did not agree with the instructions that were given. *Id.* at 1371. In dicta, we suggested that even if rule 51 had not been complied with, appellate review was appropriate because the issue was "central to the trial and justice requir[ed] review of the ... instructions as a whole." *Id.* at 1375. We do not feel bound by the limited dicta in this case, and conclude that review is foreclosed. *See Bock v. United States*, 375 F.2d 479, 480 (9th Cir.1967).

**C.**

Even if we refuse to review the remaining jointly offered instructions, Slemons contends that the jury instructions concerning the "willful" requirement for awarding liquidated damages under the Act should

be considered by us. He argues that they were erroneous in light of *Thurston,* which was decided subsequent to the jury verdict but prior to the district court's ruling on Slemons's motion for a new trial. Slemons contends that *Thurston* should be applied retroactively and that it should not be precluded from challenging the jury instructions because *Thurston* constitutes a supervening change of law. *Cf. Robinson v. Heilman,* 563 F.2d 1304, 1307 (9th Cir. 1977) (per curiam) (*Robinson*) (involving a non-objected to instruction with a subsequent change of law).

### 1.

In *Thurston,* the Court did not decide the retroactivity question because it approved the Second Circuit's interpretation of "willful." *Thurston,* 105 S.Ct. at 624–25. The Court, however, later granted certiorari to vacate and remand two other cases for reconsideration in light of *Thurston. See Avtex Fibers, Inc. v. McDowell,* 469 U.S. 1202, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985); *Prudential Federal Savings & Loan Association v. EEOC,* 469 U.S. 1154, 105 S.Ct. 896, 83 L.Ed.2d 913 (1985). On remand, the Tenth Circuit applied *Thurston* retroactively without analyzing whether it should have retroactive application. *See EEOC v. Prudential Federal Savings & Loan Association,* 763 F.2d 1166, 1174–75 (10th Cir.) (*Prudential Federal*) *cert. denied,* —— U.S. ——, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). Three other circuits have, without analysis, applied *Thurston* retroactively. *See Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 789 F.2d 253, 260 (3d Cir. 1986); *Archambault v. United Computing Systems, Inc.,* 786 F.2d 1507, 1513–14 (11th Cir.1986) (*Archambault*); *Gilkerson v. Toastmaster, Inc.,* 770 F.2d 133, 137 (8th Cir.1985).

In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (*Chevron*), the Supreme Court identified three factors that we must consider in deciding whether to apply *Thurston* retroactively: (1) whether *Thurston* "establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed," *id.* at 106, 92 S.Ct. at 355 (citations omitted); (2) whether, on balance, retroactive operation will further or retard the rule of *Thurston, id.* at 106–07, 92 S.Ct. at 355; and (3) whether retroactive application of *Thurston* to Gilchrist's action would impose substantial inequities, *id.* at 107, 92 S.Ct. at 355.

■ After reviewing these factors, we conclude that *Thurston* applies retroactively to Gilchrist's action. In *Thurston,* the Supreme Court concluded that a violation is "willful" under the Act if the "employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]." 105 S.Ct. at 625–26. The Supreme Court's articulation of the "willful" standard for liquidated damages "was not only a case of first impression" before the Court, "but it also effectively overruled" decisions by a number of circuits, *see, e.g., Mistretta v. Sandia Corp.,* 639 F.2d 588, 595 (10th Cir.1980); *Wehr v. Burroughs Corp.,* 619 F.2d 276, 283 (3d Cir.1980) (*Wehr*), including a decision by our court, *see Kelly v. American Standard, Inc.,* 640 F.2d 974, 980 (9th Cir. 1981) (*Kelly*) (adopting *Wehr* standard which did not require knowledge of the Act). *Chevron,* 404 U.S. at 107, 92 S.Ct. at 355. *Thurston* therefore represents a clear break from past precedent. Consequently, "we must examine the history, purpose, and effect of the new rule as well as the inequity that would be imposed by retroactive application." *Rivera v. Green,* 775 F.2d 1381, 1383 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1656, 90 L.Ed.2d 198 (1986).

The Court's interpretation of "willful" in *Thurston* was intended to preserve the punitive nature of liquidated damages, 105 S.Ct. at 624, and to assure that Congress's "two-tiered liability scheme" was not eviscerated, *id.* at 625. The Court's interpretation of "willful" promotes the congressional objectives by assuring that an employer who acts reasonably and in complete good

faith will not be liable for liquidated damages. *Id.* at 625 n. 22. The knowing and voluntary standard we adopted in *Kelly,* which does not require knowledge of the Act or require reckless disregard of the Act, thus frustrates congressional intent.

In addition, retroactive application of *Thurston* will not produce "substantial inequitable results." *Chevron,* 404 U.S. at 108, 92 S.Ct. at 356. There is no reason to believe that Gilchrist relied to his detriment on prior law. Moreover, *Thurston* does not prevent Gilchrist from recovering back pay or prevent recovery of liquidated damages should the facts underlying his age discrimination claim support such a recovery.

Therefore, we conclude that *Thurston* should be applied retroactively to Gilchrist's action. *Robinson* held that a failure to object as required by rule 51 does not preclude appeal where the appeal is based on a supervening change in law. 563 F.2d at 1307. Because *Thurston* constitutes a supervening change of law, Slemons is not precluded from challenging on appeal the jury instructions with respect to the "willful" requirement for liquidated damages.

### 2.

We next consider whether the liquidated damages jury instructions were contrary to *Thurston.* We review the jury instructions as a whole to determine "whether the instructions insure that the jury understands the issues in the case and is not misled in any way." *Underhill v. Royal,* 769 F.2d 1426, 1433 (9th Cir.1985) (*Underhill*).

The district judge instructed the jury that "if you determine [Slemons's] actions in violating the [Act] were willful you must award [Gilchrist] liquidated damages." The district judge defined "willful" as a "knowing and voluntary violation of the [Act]." The district judge also instructed the jury that Gilchrist "need not prove knowledge by [Slemons] of the implications of its conduct under the [Act] to prove a willful violation." Finally, the district judge instructed the jury that "[a]n award of liquidated damages is in effect a substi-

tution for punitive damages and is intended to deter intentional violations of the [Act]."

Slemons contends that these instructions are contrary to *Thurston* because they permitted the jury to award liquidated damages even if Slemons was unaware "of the implications of its conduct under the [Act]," because they failed to inform the jury concerning a good faith defense, and because they informed the jury that liquidated damages are a "substitution for punitive damages."

■ In *Thurston,* the Court concluded that a violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]." 105 S.Ct. at 625–26. We conclude that the district judge's jury instructions, formulated without the benefit of *Thurston,* did not adequately state the proper standard for a "willful" violation. The instructions permitted the jury to find that Slemons had committed a "willful" violation even if he was unaware of the implication of his actions under the Act.

Gilchrist contends that the "unaware of the implications" language should be interpreted only as not requiring specific intent to violate the statute, which does not conflict with *Thurston.* *See* 105 S.Ct. at 624 n. 19. The instruction that an employer need not be aware of the implications of its conduct under the Act, however, is an incorrect statement of the law unless it is qualified by the reckless disregard language of *Thurston.* The jury instructions given by the district judge permitted the jury to conclude that Slemons committed a "willful" violation of the Act even if Slemons was unaware that its conduct violated the Act or in good faith believed that the Act did not apply. Under the "willful" standard articulated in *Thurston,* however, liquidated damages would be inappropriate unless Slemons knew its conduct violated the Act or acted in reckless disregard of the Act.

■ Slemons contends that the jury instructions also were erroneous because

they did not include a specific reference to a good faith defense. Although we do not pass on whether such an instruction may be given, we hold that a good faith defense instruction is not necessary. In *Thurston*, the Supreme Court concluded that the good faith and reasonable grounds defense is "reflected in the proviso to § 7(b) of the [Act] that relates to willfulness." 105 S.Ct. at 625 n. 22. Therefore, the district judge did not need to instruct the jury concerning a good faith defense. An instruction that adequately states *Thurston*'s "willful" standard is sufficient.

Slemons argues that the district judge further erred in instructing the jury concerning the punitive nature of liquidated damages. In *Thurston*, the Court emphasized that "Congress intended for liquidated damages to be punitive in nature." 105 S.Ct. at 624. The district judge's instruction that liquidated damages are "in effect a substitute for punitive damages and is intended to deter intentional violations of the [Act]" did not mislead the jury.

 An error in jury instructions that relates to the "substantial rights of a party is grounds for reversal unless it affirmatively appears from the whole record that it was not prejudicial." *Cancellier v. Federated Department Stores*, 672 F.2d 1312, 1316 (9th Cir.) (*Cancellier*), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). As a result of the retroactive application of *Thurston*, the district judge's jury instructions incorrectly stated the "willful" requirement for liquidated damages. Because the evidence in this case was not overwhelming and was mostly circumstantial, we cannot say that the erroneous liquidated damages jury instructions were not prejudicial. Therefore, the jury award of liquidated damages must be reversed and remanded for consideration under the proper standard. *See Archambault*, 786 F.2d at 1514 (remanded for determination of liquidated damages issue in light of *Thurston*); *Prudential Federal*, 763 F.2d at 1175 (same).

## III

Slemons next contends that Gilchrist's state claim for breach of an implied covenant of good faith and fair dealing is preempted by state and federal law, that the district court erred in instructing the jury concerning the elements of a claim for breach of the implied covenant of good faith and fair dealing, and that the award of $50,000 for emotional damages is unsupported by the evidence.

### A.

Slemons did not assert a preemption argument in the district court. As a general rule, we will not consider on appeal an issue that was not raised in the district court absent exceptional circumstances. *See Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1483 (9th Cir.1986). Slemons has provided us with no reasons why it failed to raise this issue before the district court. *See Alexopulos v. Riles*, 784 F.2d 1408, 1411 (9th Cir.1986). Slemons contends, however, that its preemption argument is a question of subject matter jurisdiction that may be raised at any time. *See Csibi v. Fustos*, 670 F.2d 134, 136 n. 3 (9th Cir.1982).

In *International Longshoreman's Association v. Davis*, —— U.S. ——, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986), the Supreme Court considered whether a preemption argument based on the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–168, "is in the nature of an affirmative defense that must be asserted in the trial court or be considered forever waived or whether it is in the nature of a challenge to a court's power to adjudicate that may be raised at any time." *Id.* at 1907. Davis filed a suit against the International Longshoreman's Association (the Association), alleging state law fraud and misrepresentation. The Association defended the suit on the merits in the state court and did not raise a preemption argument until it filed a motion for judgment notwithstanding the verdict. *Id.* at 1909. On appeal in the Supreme Court of Alabama, the Association argued that preemption was not a waiveable affirma-

tive defense and that the state law claims were preempted by the NLRA. The Alabama Supreme Court concluded that the Association had waived the preemption argument by failing to plead it as an affirmative defense. *Id.*

■ In determining whether the state procedural ground was an adequate and independent ground for the decision, the Supreme Court concluded that it was necessary to decide "whether *Garmon* pre-emption is a waiveable affirmative defense such that a state court may adjudicate an otherwise pre-empted claim if the *Garmon* defense is not timely raised or whether the *Garmon* pre-emption is a nonwaiveable foreclosure of the state court's very jurisdiction to adjudicate." *Id.* at 1911. The Court concluded that "when a state proceeding or regulation is claimed to be preempted by the NLRA under *Garmon*, the issue is a choice-of-forum rather than a choice-of-law question. As such, it is a question whether the State or the Board has jurisdiction over the dispute." *Id.* at 1912. From the Court's conclusion we identify the following rule: a preemption argument that affects the choice of forum rather than the choice of law is not waivable; thus, it can be raised for the first time on appeal.

■ Slemons cannot seriously contend that Gilchrist's choice of a federal forum was inappropriate by arguing that the state law claim for breach of an implied covenant of good faith and fair dealing is preempted by the California Fair Employment and Housing Act (FEHA), Cal.Gov't Code §§ 12900–12996, or the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. The district court properly had jurisdiction over the state-law claim, however denominated, in connection with its jurisdiction over the federal Act claims because the state and federal claims arose out of "a common nucleus of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *see Bale v. General Telephone Co.*, 795 F.2d 775, 778 (9th Cir.1986). The existence of a state-law bar to recovery does not destroy jurisdiction over a state-law claim. Moreover, the existence of a federal preemption *defense* does not generally affect jurisdiction. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13–14, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983); *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 931–32 (9th Cir.1986) (*Williams*). Under the "artful pleading" doctrine, ostensible state-law claims may be recharacterized as federal claims if federal law "provides both a superseding remedy replacing the state law cause of action *and* preempts that state law cause of action." *Williams*, 786 F.2d at 932 (emphasis in original) (footnote omitted). Even if the state-law claim in this case could be recharacterized as a federal ERISA claim, such recharacterization would clearly fall within the district court's jurisdiction. *See* 29 U.S.C. § 1132(a)(1)(B), (e)(1). Slemons's preemption argument therefore implicates only a choice-of-law question that is waived unless it is timely raised. Consequently, we reject Slemons's contention that its preemption argument may be raised for the first time on appeal.

### B.

Slemons contends that the district court also erred in instructing the jury concerning the elements of a breach of the implied covenant of good faith and fair dealing. We previously observed that Slemons and Gilchrist jointly submitted the jury instructions given by the court. In addition to those instructions, however, Slemons proposed the following additional jury instruction:

> There is an implied covenant of good faith and fair dealing in every contract. In order to find that defendants breached the duty of good faith and fair dealing, you must find by a preponderance of the evidence that (1) that plaintiff was terminated wrongfully and without economic justification; (2) that plaintiff's longevity on the job was long enough so that his termination offends the implied in law covenant of good faith and fair dealing,

and (3) the termination violates the employer's own express policy and procedures for adjudicating employee disputes.

Gilchrist objected to the proposed instruction, and the district judge refused to give it, stating that Slemons "may file it with the court with the indication that it is refused." One of the jointly proposed instructions given by the district judge stated:

> Another theory pursued by the plaintiff in this case is the breach of good faith and fair dealing. Under this theory, the plaintiff has the burden of proving by a preponderance of the evidence all of the facts necessary to establish the following: the existence of an employment contract, oral or written; that plaintiff was discharged; that defendant's conduct in discharging plaintiff was contrary to the duty of good faith and fair dealing; and damages proximately caused by the defendant's conduct.

Slemons contends that the given instruction was erroneous because it failed to specify the prerequisites for a breach of the implied covenant and because it failed to state that there is no breach if termination is for good cause. Gilchrist contends that we need not consider this argument because Slemons waived any objection to the jury instruction by jointly submitting the instructions.

■ Slemons has, of course, preserved its right to charge error for the failure to give its additional requested instruction. But that is different from objecting to the jointly proposed instruction. Slemons's attorney stated: "Your Honor, I do agree with those instructions [including the one now attacked]. I have one additional instruction which I wish to propose." There is no indication that this additional proposed instruction constituted an objection to the jointly proposed instruction, which was given. Slemons is therefore foreclosed from challenging the instruction that was given.

■ We review the rejected jury instruction in the context of all the instructions given to determine "whether the instructions ensure that the jury understands the issues in the case and is not misled in any way." *Underhill,* 769 F.2d at 1433. We review de novo the district court's construction of California state law. *See 999,* 776 F.2d at 870.

Slemons's proposed jury instruction specified that to prove a breach of the implied covenant Gilchrist had to show longevity of service, termination in violation of Slemons's express policy and procedure for adjudicating employee disputes, and wrongful termination without economic justification. The first two elements of Slemons's proposed instruction are identified in *Foley v. Interactive Data Corp.,* 174 Cal.App.3d 282, 291, 219 Cal.Rptr. 866, 871 (1985) (*Foley*). *Foley,* however, is not settled law in California. In *Khanna v. Microdata Corp.,* 170 Cal.App.3d 250, 262–63, 215 Cal. Rptr. 860 (1985), a different California court of appeal concluded that longevity and action contrary to the employer's own policy and procedure are not essential elements to establish a breach of the implied covenant of good faith and fair dealing. The court concluded that a breach "is established whenever the employer engages in 'bad faith action extraneous to the contract, combined with the obligor's intent to frustrate the [employee's] enjoyment of contract rights.'" *Id.* at 262, 219 Cal.Rptr. at 867, *quoting Shapiro v. Wells Fargo Realty Advisors,* 152 Cal.App.3d 467, 478–79, 199 Cal.Rptr. 613, 619 (1984).

■ We are in no position to divine what the California law is on this issue. The answer will be provided, we assume, by the California Supreme Court, which has granted review in *Foley.* It would be difficult, at this juncture, to decide that the proposed instruction properly states the California law. On the other hand, the jointly proposed instruction did give general guidance to the jury on the issue presented. We need not pass on whether the given instruction adequately describes what is specifically necessary to prove a

breach of the implied covenant. Rather, we are faced with a general jury instruction about which Slemons cannot complain and a rejected jury instruction which is more specific but which cannot be said to be proper under California law. Under these circumstances, we do not believe Slemons has met its burden of demonstrating that the jury was misled by the district judge's failure to give the requested instruction.

### C.

We now address Slemons's arguments against the $50,000 emotional distress damage award. During the trial, Gilchrist was asked to describe how he felt the night he was terminated, and he testified as follows:

> That's pretty hard to describe. You feel terrible. You feel sick, almost, to have to tell your wife you have a job no more, a job that you had that was a very good position, that you earned very good money and kept you in a very good place in the community, and suddenly you don't. I don't know how to describe it. It's a shock. It's—It's something that just eats you up, you know. You don't know what to say.

In addition, during cross-examination Gilchrist testified that he had not suffered any physical injury but that he "worried" as a result of the incident.

Slemons contends that, on this evidence, damages may not be awarded because there were no out-of-pocket losses or physical effects. Under California law, however, evidence of physical harm and the costs associated with such harm are not a prerequisite to an award of damages for infliction of emotional distress. All that is required is some guarantee of genuineness in the circumstances of the case. *Molien v. Kaiser Foundation Hospital,* 27 Cal.3d 916, 930, 616 P.2d 813, 821, 167 Cal.Rptr. 831, 839 (1980). One such guarantee is an "independent cause of action apart from" the distress claim. *Id.* at 928, 616 P.2d at 819, 167 Cal.Rptr. at 837. Gilchrist's state tort claim is precisely such a cause of action.

However, Slemons also argues that the award was based on insufficient evidence. We agree. California does not allow recovery for all distress; "[i]n order to recover damages for emotional distress the injury suffered must be severe, i.e., substantial or enduring as distinguished from trivial or transitory." *Young v. Bank of America,* 141 Cal.App.3d 108, 113, 190 Cal.Rptr. 122, 126 (1983). The distress Gilchrist suffered was neither. It was not substantial: he felt terrible and he felt almost sick, but did not have severe headaches, nausea, insomnia or similar symptoms. *Compare id.* at 115, 190 Cal.Rptr. at 126–27. Nor was the distress enduring: by his own testimony, Gilchrist felt distraught only from having to tell his wife the bad news on the night he was fired. We can thus find no substantial evidence in the record of the severe emotional distress compensable under California law. *See Commercial Cotton Co. v. United California Bank,* 163 Cal.App.3d 511, 517, 209 Cal.Rptr. 551, 555 (1985) (insufficient evidence of severe emotional distress where plaintiff "was aggravated and irritated and upset" for a short time). A contrary result would convert every wrongful termination case into a claim for emotional distress.

### IV

Slemons further contends that the district court erred in admitting the letter of violation prepared by the Commission and in admitting testimony concerning an offer of employment that it made to Gilchrist during a settlement discussion. We review the district court's rulings to admit the letter and the testimony for abuse of discretion. *See M.A.P. Oil Co. v. Texaco, Inc.,* 691 F.2d 1303, 1310 (9th Cir.1982).

### A.

The letter of violation was addressed to the president of Slemons and stated in part: "The Commission has determined that the above-named respondent has discriminated against the Charging Party, Gilchrist, a Protected Age Group (PAG) person by ter-

minating him from his position of Sales Manager on 1/4/82 in violation of the Age Discrimination in Employment Act of 1982, as amended (ADEA)." The district judge was reluctant to admit the letter of violation into evidence but felt compelled to do so based on his reading of *Plummer v. Western International Hotels Co.*, 656 F.2d 502 (9th Cir.1981) (*Plummer*).

In *Plummer*, we held that a plaintiff has a "right to introduce an EEOC probable cause determination in a Title VII lawsuit, regardless of what other claims are asserted, or whether the case is tried before a judge or jury." *Id.* at 505. We concluded that the EEOC's probable cause determination must be admitted because its highly probative nature outweighed any prejudicial effect it might have on the jury. *See id.* at 504–05; *Bradshaw v. Zoological Society*, 569 F.2d 1066, 1069 (9th Cir.1978). Other circuits have concluded that the admission of probable cause determinations should be left to the discretion of the district court. *See, e.g., Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304, 1309 (8th Cir.), *cert. denied*, 469 U.S. 1041, 105 S.Ct. 525, 83 L.Ed.2d 413 (1984); *Walton v. Eaton Corp.*, 563 F.2d 66, 74–75 (3d Cir. 1977); *Cox v. Babcock & Wilcox Co.*, 471 F.2d 13, 15 (4th Cir.1972). *But see McClure v. Mexia Independent School District*, 750 F.2d 396, 399–400 (5th Cir. 1985). We have never considered, however, whether letters of violation issued by the EEOC must be admitted in an age discrimination suit brought pursuant to the Act, or whether the district court may exercise its discretion to admit such letters.

■ A letter of violation issued by the EEOC in an Act proceeding is substantially different from a probable cause determination issued by the EEOC in a Title VII case. The difference between the two becomes critical when considering the potential for prejudicial impact on a jury. In a letter of violation the EEOC concludes that a violation of the Act has occurred, whereas in a probable cause determination the EEOC determines only that there is probable cause to conclude that a violation of

Title VII has occurred. A finding of probable cause does not suggest to the jury that the EEOC has already determined that there has been a violation. Rather, it suggests that preliminarily there is reason to believe that a violation has taken place. We have held that the potential prejudicial impact of such a suggestion does not outweigh the highly probative nature of the probable cause determination. *See Plummer*, 656 F.2d at 504–05. A letter of violation, however, represents a determination by the EEOC that a violation of the Act has occurred and thus results in a much greater possibility of unfair prejudice. A jury may find it difficult to evaluate independently evidence of age discrimination after being informed that the EEOC has already examined the evidence and found a violation. The probative value of a letter of violation may not, in every case, outweigh the potential for prejudice. Therefore, the per se rule of *Plummer* does not apply and the district judge should have exercised his discretion to admit or to exclude the letter of violation.

■ The fact that the district judge admitted the letter of violation into evidence without properly exercising his discretion does not mean that he committed reversible error. An evidentiary error does not require reversal of a jury verdict unless a party's substantial rights were affected. *See* Fed.R.Evid. 103(a); *Plummer*, 656 F.2d at 505. We must determine therefore whether "the jury's verdict is more probably than not untainted by the error." *Haddad v. Lockheed California Corp.*, 720 F.2d 1454, 1459 (9th Cir.1983). Although it is admittedly a close call, we conclude that Slemons's substantial rights were not affected because under these circumstances introducing the letter of violation into evidence was more probably than not harmless.

The district judge instructed the jury that "[t]he letter need be given no greater weight than any other evidence in deciding the age discrimination claim," and that "[y]ou, the jury, and not the EEOC are the sole judges of whether or not there was a

violation of the Age Discrimination Employment Act." The judge's limiting instructions support our conclusion that the evidentiary error more probably than not did not prevent the jury from independently evaluating the evidence and from reaching its own conclusion as to whether a violation of the Act occurred.

■ Gilchrist introduced the letter of violation into evidence not as proof of discrimination but rather to prove that he did not fail to mitigate damages. Gilchrist argued that the letter was relevant to demonstrate that the Honda job offer was made only after and because of the violation letter. Slemons could have asked for an instruction further limiting consideration of the letter to that issue but did not do so. *See Brocklesby v. United States,* 767 F.2d 1288, 1293 (9th Cir.1985) (if limiting instruction is not requested, error from failure to give it is waived), *cert. denied,* —— U.S. ——, 106 S.Ct. 882, 88 L.Ed.2d 918 (1986). Slemons cannot now demand that evidence be altogether excluded because it failed to request an instruction limiting use of that evidence.

### B.

Slemons argues that the district judge also abused his discretion in admitting testimony concerning the offer of employment it made to Gilchrist during a settlement discussion. Slemons objected to the offer of employment testimony on hearsay grounds. The district judge questioned whether the offer of employment at Slemons's Honda dealership was inadmissible because it constituted a settlement offer. Gilchrist argued that Slemons's remark in its opening statement that it had offered Gilchrist a job at the Honda dealership and that he had refused the offer opened the door for testimony as to why Gilchrist refused the offer. Slemons, without waiving its hearsay objection, agreed that the testimony was admissible on the issue of mitigation.

■ Slemons now contends that Gilchrist attempted to characterize the offer as an admission of guilt. Our review of the record convinces us that the settlement offer evidence was not introduced in such a way as to suggest an admission of liability. Furthermore, the district judge, as a cautionary measure, instructed the jury that it was "not to infer from the settlement offer of the Honda position any admission of liability on the part of [Slemons]. This offer is admissible for the limited purpose of determining damages if appropriate." We conclude the district judge did not abuse his discretion in admitting the evidence.

### V

■ Slemons contends that the award of back pay damages was unsupported by the evidence. Slemons first argues that the award of commission income based on the amount of commissions Gilchrist earned during 1981, his last work year, was improper because 1981 was an atypically good year for car sales. A jury's finding of the amount of damages must be upheld unless the amount is clearly not supported by the evidence and is grossly excessive, monstrous, or shocking to the conscience. *Chalmers v. City of Los Angeles,* 762 F.2d 753, 760 (9th Cir.1985). The jury's apparent reliance on Gilchrist's last year of commission salary to estimate his lost earnings during the time in which he was allegedly unable to find employment does not amount to such an error.

■ Slemons's next argues that the back pay award was erroneous because there was insufficient evidence to support the finding that Gilchrist had properly mitigated his damages. The issue of mitigation was hotly litigated during the trial and a significant amount of evidence was presented by both parties concerning offers of employment from Slemons and concerning Gilchrist's efforts to obtain other employment. As we previously concluded, however, Slemons's failure to move for a directed verdict on Gilchrist's Act claim at the close of evidence forecloses us from considering sufficiency of the evidence questions on appeal with respect to the Act

claim. *See supra* at 1493. Therefore, we limit our review to the district court's denial of Slemons's motion for a new trial. *See Farley Transportation*, 786 F.2d at 1347. Because we conclude that the record contains some evidence in support of the Act back pay damage award, we find that the district judge did not err in denying Slemons's motion for a new trial.

### VI

■ Gilchrist requests that we award him attorneys' fees on appeal based on *Cancellier*, 672 F.2d 1312, and Fed R.App.P. 38. In *Cancellier*, we concluded that "[a] grant of fees on appeal is within the discretion of the appellate court." 672 F.2d at 1320. Because we have found it necessary to reverse the emotional distress damage award and remand for reconsideration of the liquidated damages issue, we decline to award Gilchrist attorneys' fees as a prevailing party. Costs will be borne by each party.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.