892 F.2d 1046
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Glen HANSON, a minor, By and Through his guardian ad litem;
Catherine HANSON, Guardian ad litem; Duane
Hanson, Guardian ad litem, Plaintiffs-Appellants,
v.
The PRUDENTIAL INSURANCE CO. OF AMERICA, Defendant-Appellee.
Glen HANSON, a minor, By and Through his guardian ad litem;
Catherine HANSON, Guardian ad litem; Duane
Hanson, Plaintiffs-Appellees,
v.
The PRUDENTIAL INSURANCE CO. OF AMERICA, Defendant-Appellant.
 Nos. 88-2644, 88-2709.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 10, 1989.
Decided Jan. 10, 1990.
 
 Before WILLIAM A. NORRIS, BRUNETTI and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In April 1976, Glen Hanson, through his guardians ad litem, Catherine and Duane Hanson (the Hansons), insured under a group medical insurance policy issued by Prudential Insurance Company (Prudential), filed an action against Prudential to recover policy benefits for treatment received by Glen Hanson at Clear Water Ranch Children's Home (Clear Water Ranch), a residential treatment facility specializing in the treatment of preadolescent children suffering from functional nervous disorders.
 
 
 3
 The district court granted summary judgment for Prudential and the Hansons appealed. This court in an unpublished memorandum decision, vacated the judgment and remanded on the ground that a triable issue of fact existed. Hanson v. Prudential Ins. Co. of America, 665 F.2d 1052 (9th Cir.1981).
 
 
 4
 On remand, the district court ruled for Prudential after a trial finding that Clear Water Ranch failed to meet the policy definition of a hospital because it did not provide twenty-four hour a day nursing service and the Hansons appealed. In the second appeal, this court vacated and remanded to the district court to make additional findings of fact on the issue of whether Clear Water Ranch was a "hospital" within the meaning of the policy. Hanson v. Prudential Ins. Co. of America (Hanson I), 783 F.2d 762, 766 (9th Cir.1985).
 
 
 5
 On March 19, 1987, the district court in its supplemental findings of fact and conclusions of law ruled that Clear Water Ranch met the policy's definition of a "hospital" and that Glen Hanson was entitled to coverage for the period of time that Glen was a patient at Clear Water Ranch. The Hansons were awarded $18,029.03, which represents the coverage for the period of time Glen was a patient at Clear Water Ranch ($7,465.34) plus interest ($10,563.69). Both parties' motions for reconsideration were denied by the district court and both parties appeal. The Hansons appeal the district court's ruling denying both consequential damages and damages for emotional harm. Prudential cross-appeals contending that the district court erred in finding that Prudential had waived its ERISA preemption claim and that the district court's supplemental Finding of Fact No. 5 and supplemental Conclusions of Law Nos. 7 and 8 are erroneous. Prudential also contends that the district court erred in denying Prudential's request for certain supplemental findings of fact.[1]
 
 DISCUSSION
 I. ERISA Preemption Argument
 
 6
 The district court ruled that Prudential waived its ERISA preemption argument because it was "presented for the first time in [Prudential's] Supplemental Brief filed January 20, 1988." Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Prudential argues that the district court erred in its ruling because (1) the preemption argument affects the choice of forum and is not waivable and (2) even if waivable, Prudential preserved the issue for appellate review.
 
 
 7
 In International Longshoremen's Ass'n v. Davis, 476 U.S. 380 (1985), the Supreme Court held that an argument that a state law claim is preempted by the NLRA "is in the nature of a challenge to a court's power to adjudicate that may be raised at any time." Id. at 382. In Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488 (9th Cir.1986), we analyzed the reasoning in Davis and stated the following rule: "a preemption argument that affects the choice of forum rather than the choice of law is not waivable; thus, it can be raised for the first time on appeal." Id. at 1497. We then determined that an argument that ERISA preempts state law "implicates only a choice-of-law question that is waived unless it is timely raised." Id.
 
 
 8
 This court, in Johnson v. Armored Transp. of California, Inc., held that the defendant had waived the argument that "[the LRMA] preempts the state law wrongful discharge claim." 813 F.2d 1041, 1044 (9th Cir.1987). Where "a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." Id. As such, the claim would fall within the district court's jurisdiction and any preemption argument could affect only the choice of law but not the choice of forum.
 
 
 9
 In this case, even if Prudential's preemption argument were valid, it would not force the Hansons to bring this action in a different forum. If preempted, the Hansons' state law claim would be recharacterized as a federal claim brought pursuant to ERISA and would fall within the district court's jurisdiction. Prudential's preemption argument affects only the choice-of-law but not the choice-of-forum. Accordingly, for the same reasons described in Gilchrist and Johnson, the preemption argument in this case affects choice-of-law and is waivable.
 
 
 10
 Even if the preemption argument is waivable, Prudential contends that it properly preserved the issue for appellate review when its counsel stated in final argument:
 
 
 11
 I think I have just about shot all of the arrows, except I would--two things that are really not covered, very short, and I will just mention them, I want to reserve--the first one is E.R.I.S.A. preemption, that the Pitney Bowes program, under E.R.I.S.A., could have damages preempted, and not allowed under E.R.I.S.A.
 
 
 12
 Throughout the past twelve years of litigation, this is the only reference Prudential made to ERISA preemption. Prudential failed to assert the defense of preemption in any of its pleadings and never raised its ERISA argument in the first (1981) or second appeal (1986) to this court.
 
 
 13
 In the above excerpt, Prudential's counsel did argue that the damages could be preempted by federal law, but merely mentioned ERISA.
 
 
 14
 [A]n issue is not properly reserved by perfunctory invocation of a vast and variegated body of law--by pointing to the Title 29 of the United States Code and inviting the district court judge to thumb through it for some ground on which the party extending the invitation can win.... A district judge is ... entitled to disregard a ground raised but not pressed.
 
 
 15
 National Metalcrafters, Div. of Keystone Consol. Indus. v. McNeil, 784 F.2d 817, 825 (7th Cir.1986); see McCabe v. General Foods Corp., 811 F.2d 1336, 1340 (9th Cir.1987). Prudential, by failing to "press" and advance the argument in district court, has not adequately preserved the issue for judicial review.
 
 
 16
 Prudential next contends that because of Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), this court should exercise its discretion to rule on the ERISA preemption issue. This contention lacks merit. In Pilot Life, the Supreme Court held that state common law causes of action arising from the improper processing of a claim are preempted by federal law. It is true that district courts, prior to the Pilot Life decision, did hold that common law and statutory bad faith claims were not preempted by ERISA. E.g., Presti v. Connecticut Gen. Life Ins. Co., Inc., 605 F.Supp. 163, 167-68 (N.D.Cal.1985); Kanne v. Connecticut Gen. Life Ins. Co., 607 F.Supp. 899 (C.D.Cal.1985), vacated per curiam, 859 F.2d 96 (9th Cir.1988).
 
 
 17
 But both the Priest and Kanne decisions were not decided until well after Prudential's answer to the Second Amended Complaint (April 8, 1982) and were not a bar to the defense when Prudential filed its answer; nor did Prudential seem to raise the defense while Pilot Life was pending before the Supreme Court. Rather, Prudential presented this argument for the first time in its Supplemental Brief filed on January 20, 1988. Therefore, Prudential has neglected this legal defense too long to raise it for the first time on appeal. Johnson, 813 F.2d at 1044 (Defendant "waived the argument" that federal law preempts state law claim because "the argument was not properly preserved in the district court."); Gilchrist, 803 F.2d at 1497 (an argument that ERISA preempts state law implicates only a choice-of-law question that "is waived unless it is timely raised.").
 
 
 18
 II. Conclusions of Law No. 7 and No. 8 and Finding of Fact No. 5
 
 
 19
 Prudential contends that the district court's Supplemental Conclusions of Law No. 7 and No. 8 are contrary to California law.
 
 
 20
 Supplemental Conclusion of Law No. 7 states:
 
 
 21
 7. The policy must be interpreted in the light of plaintiff's reasonable expectations and in the manner which most favors coverage. Reserve Insurance Co. v. Pisciotta, 30 Cal.3d 800 (1982).
 
 
 22
 Supplemental Conclusion of Law No. 8 states:
 
 
 23
 8. At all relevant times Clear Water Ranch was a hospital within the policy definition as the same could be reasonably interpreted by persons in the position of plaintiffs.
 
 
 24
 The Hansons' policy defines hospital as "an institution which is operated pursuant to law and is primarily engaged in providing on an in-patient basis for the medical care and treatment of sick and injured persons through medical, diagnostic and major surgical facilities, all of which facilities must be provided on its premises under the supervision of a staff of physicians with twenty-four hour a day nursing service." Hanson I, 783 F.2d at 765.
 
 
 25
 Since the definition of the term "hospital" is ambiguous, the district court, in its Supplemental Conclusion of Law No. 7, correctly relied on Reserve Ins. Co. v. Pisciotta, 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764 (1982) and construed the term "in light of the Hansons' reasonable expectations, and in the manner which most favors coverage." Hanson I, 783 F.2d 765. The two cases Prudential relies upon, New York Life Ins. Co. v. Hollender, 38 Cal.2d 73, 81, 237 P.2d 510 (1951) and State Farm Mut. Auto Ins. Co. v. Ball, 127 Cal.App.3d 568, 572-73, 179 Cal.Rptr. 644 (1981), are not contrary, as these cases discuss only plain, explicit and clear contract terms, not ambiguous terms as in the present case.
 
 
 26
 Prudential argues that the district court's supplemental Finding of Fact No. 5 is contrary to the evidence presented at trial. Finding of Fact No. 5 states: "5. Clear Water Ranch possessed at relevant times medical care and treatment and on-premises diagnostic facilities appropriate to the needs of its patient population. Testimony of Stubblebine."
 
 
 27
 Prudential argues that because Clear Water Ranch does not have a laboratory, surgical facilities, pharmacy, or the capability to handle acute emergencies, and was not licensed as an acute medical care facility, it does not provide the appropriate medical care and treatment for its patients. According to Prudential, the medical care provided by Clear Water Ranch was little more than that provided in a normal home.
 
 
 28
 While there was conflicting evidence on what medical, diagnostic and surgical facilities are appropriate for an institution which provides in-patient care for children with functional nervous disorders, Dr. Stubblebine, Psychiatrist and Director of Mental Hygiene and Health, testified that Clear Water Ranch had "medical facilities on its premises which are appropriate for the diagnosis and treatment of functional nervous disorders in children." Moreover, other experts testified as to the medical treatment and diagnostic programs performed at Clear Water Ranch. The district court did not clearly err in finding that Clear Water Ranch had appropriate medical facilities for its patient population.[2] Fed.R.Civ.P. 52(a).
 
 
 29
 Finally, the district court's Conclusion of Law No. 8 that Clear Water Ranch was a hospital within the policy definition is correct. Since the policy's hospital coverage includes expenses incurred for "[p]hysicians' services arising from mental, psychoneurotic or personality disorders," an insured could reasonably expect that a "hospital" under the terms of the policy would include an institution which provides inpatient medical care and treatment for functional nervous disorders. Since Clear Water Ranch provides appropriate medical treatment for functional nervous disorders and is under the supervision of a physician and twenty-four hour nursing service, the district court correctly concluded that Clear Water Ranch qualifies as a "hospital."
 
 III. Consequential Damages
 
 30
 The Hansons contend that the district court erroneously concluded as a matter of law that Glen Hanson "was not entitled to consequential damages or to damages for unjust enrichment." Conclusion of Law No. 13. Although Glen was admitted to Clear Water Ranch for three to five years of treatment, Glen dropped out of Clear Water Ranch after five months of treatment because Prudential denied coverage. The Hansons contend that Prudential has been unjustly enriched by not having to pay further claims and that Glen has suffered consequential damages as a result of Prudential's refusal to pay for his treatment and care at Clear Water Ranch. Accordingly, they argue that the district court erred in limiting Glen's damages to the cost of treatment Glen actually received at Clear Water Ranch.
 
 
 31
 The district court judge ruled that the Hansons were not entitled to consequential damages as a matter of law. The Hansons' policy expressly limits hospital coverage to expenses actually incurred by the insured. Section 10111 of the California Insurance Code provides that "[i]n life or disability insurance, the only measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto." Cal.Ins.Code § 10111.
 
 
 32
 Since Section 10111 limits recoveries on life and disability policies to the sum payable under the policy, the Hansons are entitled to payment for treatments and care actually received and covered by the policy. Although section 10111 does not restrict recovery to the amounts due under the policy when a case sounds in tort, Fletcher v. Western Nat'l Life Ins. Co., 10 Cal.App.3d 376, 401-02, 89 Cal.Rptr. 78 (1970), if the insurance company does not unreasonably withhold benefits due, the legislature, under section 10111, intended that the insured's damages be confined to the amount set in the policy. McDowell v. Union Mut. Life Ins. Co., 404 F.Supp. 136, 142-43 (C.D.Cal.1975).
 
 
 33
 The district court apparently denied recovery of damages for alleged emotional harm suffered by Glen from the denial of coverage. Section 10111 also precludes recovery for emotional harm resulting from Prudential's breach of the insurance contract. Even if Section 10111 does not preclude recovery, however, damages for emotional harm resulting from a breach of contract are not recoverable absent special circumstances. 1 B. Witkin, Summary of California Law, Contracts § 829 (9th ed. 1987). The Hansons argue that special circumstances exist here because Prudential denied coverage where an express purpose of the policy is to treat mental illness.
 
 
 34
 We disagree. Examples of California cases allowing damages for emotional distress resulting from breach of contract are contracts made by cemeteries for disposition of dead bodies, contracts for the delivery of messages concerning death, and contracts between common carriers or innkeepers and their passengers or guests. See, e.g., Chelini v. Nieri, 32 Cal.2d 480, 196 P.2d 915 (1948); Westervelt v. McCullough, 68 Cal.App. 198, 228 P. 734 (1924).
 
 
 35
 In this case, Prudential acted reasonably and the situation does not qualify as "special circumstances". See Hanson I, 783 F.2d at 766. The district court correctly denied recovery of damages for emotional harm.
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 Prudential requested that the following additional supplemental findings be made by the district court:
 2(a) Clear Water Ranch had no diagnostic facilities on the premises in 1975. All diagnosis was done by social history and referral material received by Clear Water Ranch upon admission.
 2(b) Clear Water Ranch received no reports of any medical pre-screening or diagnosis of Glen Hanson in connection with his admission at Clear Water Ranch.
 2(c) Clear Water Ranch received no psychological tests, reports or medical opinions in connection with the admission of Glen Hanson at Clear Water Ranch.
 2(d) In 1975, no pre-screening was done or required by Clear Water Ranch to assure that only persons with functional nervous disorders were admitted to Clear Water Ranch.
 2(f) In 1975, Clear Water Ranch had no facilities on premises for further diagnosis.
 
 
 [9]
 Clear Water Ranch in 1975 had no major surgical facilities
 
 
 [10]
 Prudential's administrative policy of waiving the Policy requirement of on-premises major surgical facilities was applied only if all other elements of its policy definition were met
 
 
 [11]
 Treatment facilities such as Napa State Hospital and Langley-Porter Hospital were available to plaintiffs and Glen Hanson after he left Clear Water Ranch
 
 
 [12]
 It was not foreseeable in September 1975 that Glen Hanson would not be placed in Napa State Hospital, or Langley-Porter Hospital with a psychiatric department [sic]
 
 
 [13]
 After leaving Clear Water Ranch, Glen Hanson received effective treatment at a number of other institutions, where he made progress until removed by his family
 
 
 [14]
 Glen Hanson's mother, Catherine Sutfin, periodically removed him from treatment
 
 
 [15]
 When Glen Hanson got better, his mother got worse
 
 
 [16]
 Glen Hanson's improvement threatened his mother
 
 
 [17]
 Mrs. Sutfin helped prevent Glen Hanson's later treatment at Napa State Hospital
 
 
 [2]
 Accordingly, the district court correctly denied Prudential's request for supplemental findings of fact Nos. 2(a)-2(f), 9 and 10