[No. B166248. Second Dist., Div. Five. Apr. 6, 2004.]

ARTHUR W. HEDGES et al., Plaintiffs and Respondents, v. STEPHEN E. CARRIGAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion, the majority and the concurring opinion, is certified for publication with the exception of the indicated portions of the Discussion (part III).

**COUNSEL**

Jones, Bell, Abbott, Fleming & Fitzgerald, Fredrick A. Rafeedie and William M. Turner for Defendant and Appellant.

Law Offices of Leslie J. Hedges and Leslie J. Hedges for Plaintiffs and Respondents.

## Opinion

## TURNER, P. J.—

## I. INTRODUCTION

Defendant, Stephen E. Carrigan, individually and doing business as National Real Estate Council, appeals from an order denying his petition pursuant to Code of Civil Procedure section 1281.2[1] to compel plaintiffs, Arthur W. Hedges and Dimity Hedges, to arbitrate a dispute. The dispute arose from plaintiffs' purchase of a single family residence from the sellers and defendants, Lane G. Weinman and Cynthia N. Weinman. In the published portion, we discuss whether section 1298 is subject to the limited preemptive effect of the United States Arbitration Act. We affirm.

## II. BACKGROUND

On September 9, 2002, plaintiffs filed their action on a number of contractual and tort theories against: the Weinmans; Mr. Carrigan, who was plaintiffs' broker; and Todd Olsen Realty and Debbie Schreve, who was the Weinmans' broker. The complaint alleged that defendants failed to disclose several defects in the residence, which plaintiffs discovered after they purchased and occupied the home in September 2000.

On February 7, 2003, Mr. Carrigan filed a petition for an order compelling plaintiffs to mediate and to arbitrate the controversy. (The parties subsequently agreed to mediate the dispute.) The petition to compel alleged that: on January 10, 2003, Mr. Carrigan was served with the summons and complaint; by letter dated January 28, 2003, Mr. Carrigan's counsel demanded mediation and arbitration; and plaintiffs have refused his demand. The following are the pertinent facts. Mr. Carrigan acted as plaintiffs' broker in connection with the purchase of the residence. On August 15, 2000, plaintiffs executed a written residential purchase agreement, joint escrow instructions, and deposit receipt which contains an arbitration clause. The August 15, 2000, residential purchase agreement, joint escrow instructions, and deposit receipt was in legal effect an offer to purchase the residence under specified terms. Paragraph 7D of the August 15, 2000, residential purchase agreement, joint escrow instructions, and deposit receipt required that the controversy be arbitrated if agreed to by the parties. Paragraph 7D provides: "BROKERS: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, provided either or both

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Brokers shall have agreed to such mediation or arbitration, prior to or within a reasonable time after the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement." Paragraph 7 of the agreement is entitled "Dispute Resolution" and provides in part: "A. MEDIATION: Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraphs 17C and D below. Mediation fees, if any shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney's fees, even if they would otherwise be available to that party in any such action. THIS MEDITATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. [¶] B. ARBITRATION OF DISPUTES: Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17C and D below. . . . NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. [¶] WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION." Plaintiffs initialed the space as required by paragraph 7D.

On August 17, 2000, the Weinmans, the sellers, made a written counteroffer. On the same date, plaintiffs accepted the Weinmans' written counteroffer. The August 17, 2000, written counteroffer executed by both the Weinmans and plaintiffs was a single document.

The August 17, 2000, written counteroffer referred to the August 15, 2000, residential purchase agreement, joint escrow instructions, and deposit receipt as follows, "Paragraphs in the purchase contract (offer) which require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer." Paragraph 1C of the August 17, 2000, written counteroffer made no reference to paragraph 7D, the arbitration clause, in the August 15, 2000, residential purchase agreement, joint escrow instructions, and deposit receipt. Defendants never initialed paragraph 7D, the arbitration clause, in the August 15, 2000, residential purchase agreement, joint escrow instructions, and deposit receipt.

On March 10, 2003, the trial court denied the petition to compel arbitration. This timely appeal followed. Because this is a case involving enforcement of an arbitration clause, we have treated the case as a preference matter as required by statute. (§ 1291.2; Cal. Rules of Court, rule 19.)

### III. DISCUSSION

#### A. Section 1298 and the United States Arbitration Act.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Plaintiffs contend the arbitration clause in the August 15, 2000, residential purchase agreement, joint escrow instructions, and deposit receipt is unenforceable because it does not comply with the notice and format provisions required by section 1298.[2] Section 1298 imposes various requirements on

---

[*]See footnote, *ante*, page 578.

[2] Section 1298 states in pertinent part: "(a) Whenever any contract to convey real property, or contemplated to convey real property in the future, including marketing contracts, deposit receipts, real property sales contracts as defined in Section 2985 of the Civil Code, leases together with options to purchase, or ground leases coupled with improvements, but not including powers of sale contained in deeds of trust or mortgages, contains a provision for binding arbitration of any dispute between the principals in the transaction, the contract shall have that provision clearly titled 'ARBITRATION OF DISPUTES.' [¶] If a provision for binding arbitration is included in a printed contract, it shall be set out in at least 8-point bold type or in contrasting red in at least 8-point type, and if the provision is included in a typed contract, it shall be set out in capital letters. [¶] (b) Whenever any contract or agreement between principals and agents in real property sales transactions, including listing agreements, as defined in Section 1086 of the Civil Code, contains a provision requiring binding arbitration of any dispute between the principals and agents in the transaction, the contract or agreement shall have that provision clearly titled 'ARBITRATION OF DISPUTES.' [¶] If a provision for binding arbitration is included in a printed contract, it shall be set out in at least 8-point bold type or in contrasting red in at least 8-point type, and if the provision is included in a typed contract, it shall be set out in capital letters. [¶] (c) Immediately before the line or space provided for the parties to indicate their assent or nonassent to the arbitration provision

arbitration clauses in specified real estate agreements including in part: point size and bolded font specifications; a specific reference to "ARBITRATION OF DISPUTES"; and a warning that certain rights attendant to judicial proceeding are being lost by initialing the agreement to arbitrate. Plaintiffs contend the arbitration clause at issue did not comply with section 1298 and the failure to do so rendered the agreement to arbitrate unenforceable. We need not address the question as to whether the arbitration clause complied with section 1298. Nor need we discuss whether the purported failure to comply with section 1298 invalidates the arbitration clause.

■ Rather, we conclude that the United States Arbitration Act would preempt a statutory requirement or judicial holding that compliance with section 1298 is a condition precedent to enforcement of an arbitration clause contained in one of the specified contracts. The limited preemptive effect of United States Arbitration Act is based on title 9 United States Code, section 2, which states in pertinent part: "A written provision in any . . . contract, evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (See *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 85 [134 Cal.Rptr.2d 446]; *Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270, 1286–1287 [79 Cal.Rptr.2d 726].) ■ Thus, an arbitration contract must be enforced according to its terms subject to state law defenses applicable to all disputes under general contract law principles such as fraud, duress, or unconscionability. (*Doctor's Associates, Inc. v. Casarotto* (1996)

---

described in subdivision (a) or (b), and immediately following that arbitration provision, the following shall appear: [¶] 'NOTICE: BY INITIALLING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALLING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.' 'WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.' [¶] If the above provision is included in a printed contract, it shall be set out either in at least 10-point bold type or in contrasting red print in at least 8-point bold type, and if the provision is included in a typed contract, it shall be set out in capital letters."

517 U.S. 681, 687 [134 L.Ed.2d 902, 116 S.Ct. 1652]; *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 281 [130 L.Ed.2d 753, 115 S.Ct. 834]; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 407, 410 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) A court may not invalidate an agreement to arbitrate under state laws that are only applicable to arbitration clauses. (*Doctor's Associates, Inc. v. Casarotto, supra,* 517 U.S. at p. 687; *Allied-Bruce Terminix Cos. v. Dobson, supra,* 513 U.S. at p. 281.) In *Perry v. Thomas* (1987) 482 U.S. 483, 492–493, footnote 9 [96 L.Ed.2d 426, 107 S.Ct. 2520], the United States Supreme Court explained, "A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." (See *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1075 [90 Cal.Rptr.2d 334, 988 P.2d 67].) As Justice Stephen Breyer plainly explained: "What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the [United States Arbitration] Act's language and Congress' intent. See *Volt* [*Info. Sciences v. Leland Stanford Jr. U.* (1989)] 489 U.S. [468,] 474 [103 L.Ed.2d 488, 109 S.Ct. 1248]." (*Allied-Bruce Terminix Cos. v. Dobson, supra,* 513 U.S. at p. 281.)

■ These general principles describing the limited preemptive effect of the United States Arbitration Act control the effect of section 1298 in the present case. In *Doctor's Associates, Inc. v. Casarotto, supra,* 517 U.S. at page 683, the United States Supreme Court examined a Montana law that invalidated any arbitration clause unless " '[n]otice that [the] contract is subject to arbitration' " was " 'typed in underlined capital letters on the first page of the contract.' " After adverting to the Supreme Court's prior decisions in *Southland Corp. v. Keating* (1984) 465 U.S. 1, 16 [79 L.Ed.2d 1, 104 S.Ct. 852], which held a portion of California's Franchise Investment Law was preempted by the United States Arbitration Act, and *Perry v. Thomas,* 482 U.S. at pages 491–492, which invalidated on preemption grounds this state's prohibition of arbitration of wage claims, Associate Justice Ruth Bader Ginsburg wrote in *Doctor's Associates*: "Montana's § 27-5-114(4) directly conflicts with § 2 of the [United States Arbitration Act] because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The [United States Arbitration Act] thus displaces the Montana statute with respect to arbitration agreements covered by the Act. See 2 I. Macneil, R. Speidel, T. Stipanowich, & G. Shell, Federal Arbitration Law § 19.1.1, pp. 19:4–19:5 (1995) (under *Southland* and *Perry,* 'state legislation requiring greater information or choice in the making of agreements to arbitrate than in other contracts is preempted')." (*Doctor's Associates, Inc. v. Casarotto, supra,*

517 U.S. at p. 687, fn. omitted; accord, *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 58 [131 L.Ed.2d 76, 115 S.Ct. 1212] [9 U.S.C. § 2 preempts New York prohibition against arbitrating punitive damages]; *Allied-Bruce Terminix Cos. v. Dobson, supra,* 513 U.S. at pp. 268–277 [United States Arbitration Act preempts Alabama statute making predispute arbitration agreements unenforceable].) As with the notice requirements in *Doctor's Associates,* section 1298 does not apply generally to contracts. Rather, section 1298 applies *only to arbitration clauses* in specified real estate transaction documents. Under the compulsion of Justice Ginsburg's analysis in *Doctor's Associates,* section 1298, with its font and point size, notification, and warning requirements taken together, cannot be judicially construed to invalidate the arbitration clause at issue without violating the United States Arbitration Act.

 One final note is in order concerning the application of the United States Arbitration Act. The limited preemptive effect of the United States Arbitration Act applies only in the case of an arbitration clause in "a contract evidencing a transaction involving commerce." (9 U.S.C. § 2.) The arbitration clause in the August 15, 2000, residential purchase agreement, joint escrow instructions, and deposit receipt is contained in a "contract evidencing a transaction involving commerce" within the meaning of title 9 United States Code section 2. The United States Supreme Court has explained that the words "involving commerce": reflect an intent to exercise the congressional commerce clause powers "to the full"; are "broad and . . . the functional equivalent of . . ." the adjective " 'affecting' " interstate commerce; are not to be construed so as to apply only when the parties contemplate the transaction will involve interstate commerce; and require that the United States Arbitration Act apply when a transaction *in fact* "involve[s]" interstate commerce. (*Allied-Bruce Terminix Cos. v. Dobson, supra,* 513 U.S. at pp. 273–274, 281.) Thus, in *Allied-Bruce,* the Supreme Court held that a contract providing for termite eradication in and repairs to a residence involved interstate commerce and hence was subject to the limited preemptive effect of the United States Arbitration Act. (*Allied-Bruce* at p. 282.)

The United States Supreme Court later synthesized its holding in *Allied-Bruce* in *Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56–57 [156 L.Ed.2d 46, 123 S.Ct. 2037], a case involving an arbitration clause in a debt restructuring agreement, as follows: "We have interpreted the term 'involving commerce' in the [United States Arbitration Act] as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Allied-Bruce Terminix Cos., [supra,]* 513 U.S., at 273–274 []. Because the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' *Perry v. Thomas, [supra,]* 482 U.S. 483, 490 [] (1987), it is perfectly clear that the [United States Arbitration Act]

encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce,' *Allied-Bruce Terminix Cos., supra,* at 273 [] (internal quotation marks, citation, and emphasis omitted)." The court continued: "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.' *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 236 [92 L.Ed. 1328, 68 S.Ct. 996] (1948). See also *Perez v. United States,* 402 U.S. 146, 154 [28 L. E.2d 686, 91 S.Ct. 1357] (1971); *Wickard v. Filburn,* 317 U.S. 111, 127–128 [87 L.Ed. 122, 63 S.Ct. 82] (1942). Only that general practice need bear on interstate commerce in a substantial way. *Maryland v. Wirtz,* 392 U.S. 183, 196–197, n. 27 [20 L.Ed.2d 1020, 88 S.Ct. 2017] (1968); *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 37–38 [81 L.Ed. 893, 57 S.Ct. 615] [] (1937)." (*Citizens Bank v. Alafabco, Inc., supra,* 539 U.S. at pp. 56–57 [123 S.Ct. at p. 2040].)

In the present case, the August 15, 2000, residential purchase agreement, joint escrow instructions, and deposit receipt as well as the accepted August 17, 2000, counteroffer was a contract which evidenced a transaction "involving commerce" within the meaning of title 9 United States Code section 2. The anticipated financing involved the use of a $213,400 Federal Housing Administration home loan, which is subject to the jurisdiction of the United States Department of Housing and Urban Development headquartered in Washington, D.C. Further, the various copyrighted forms used by the parties and their brokers could only be utilized by members of the National Association of Realtors. These documents included: the August 15, 2000, residential purchase agreement, joint escrow instructions, and deposit eceipt; the August 17, 2000, counteroffer; and a real estate transfer disclosure statement, which the Weinmans were alleged to have filled out in a deceptive fashion. In *Citizens Bank v. Alafabco, Inc., supra,* 539 U.S. at pp. 57–58 [123 S.Ct. at p. 2041], the Supreme Court explained the relationship between lending agreements and commerce: "[W]ere there any residual doubt about the magnitude of the impact on interstate commerce caused by the particular economic transactions in which the parties were engaged, that doubt would dissipate upon consideration of the 'general practice' those transactions represent. *Mandeville Island Farms, supra,* at 236 []. No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause. *Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 38–39 [64 L.Ed.2d 702, 100 S.Ct. 2009] [] (1980) ('[B]anking and related financial activities are of profound local concern. . . . Nonetheless, it does not follow that these same activities lack important interstate attributes'); *Perez, supra,* at 154–155 [] ('Extortionate credit transactions, though purely intrastate, may in the judgment

of Congress affect interstate commerce').'' Given the foregoing language in *Citizens Bank*, the present transaction involves financing, which evidences a transaction in commerce.

No doubt the connection with interstate commerce in this case is not as strong as in others. (*Citizens Bank v. Alafabco, Inc., supra,* 539 U.S. at pp. 56–57 [123 S.Ct. at p. 2040] [interstate entity entered into a debt restructuring agreement]; *Allied-Bruce Terminix Companies, Inc. v. Dobson, supra,* 513 U.S. at p. 282 [supplies to fumigate and repair residential termite damage came from out of the state where the dispute arose]; *Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205 [120 Cal.Rptr.2d 328] [alleged defective fixtures in construction defect litigation manufactured outside California].) However, the federal financing in this case supervised by an organ of the United States government located in Washington, D.C. plus the use of copyrighted transaction documents promulgated by a national organization which could only be used by its members lead us to the conclude the agreement at issue "evidenc[es] a transaction involving commerce" with the meaning of title 9 United States Code section 2. Hence, there is no merit to plaintiffs' contention that section 1298 requires the arbitration clause be invalidated.

### B. Contractual Issues*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The order denying the petition to compel plaintiffs to arbitrate the controversy is affirmed. Plaintiffs, Arthur W. and Dimity Hedges, are entitled to their costs on appeal from defendant, Stephen E. Carrigan.

Armstrong, J., concurred.

**MOSK, J.,** Concurring.—I concur in the result.

Having held that there was no enforceable arbitration agreement and therefore affirming the trial court's denial of the petition to arbitrate, this court should not have reached the constitutional issue of preemption in order to make substantially inoperative an important state consumer protection law—Code of Civil Procedure section 1298. (See *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1] [" '[a] court will not

---

*See footnote, *ante,* page 578.

decide a constitutional question unless such construction is absolutely necessary' "]; *Kollander Construction, Inc. v. Superior Court* (2002) 98 Cal.App.4th 304, 314 [119 Cal.Rptr.2d 614] ["[w]e are constrained to avoid constitutional questions where other grounds are available and dispositive"].)

Moreover, the parties before the trial court did not argue, and the trial court did not rely upon, the preemption doctrine. The parties did not even raise the issue before this court. They only discussed the point after this court advanced the preemption issue. Under those circumstances, the preemption argument should have been deemed waived (i.e., forfeited). (See *Nemarnik v. Los Angeles Kings Hockey Club* (2002) 103 Cal.App.4th 631, 638, fn. 3 [127 Cal.Rptr.2d 10] ["[a] party's failure to raise an issue below and in its opening brief constitutes a waiver"]; *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [88 Cal.Rptr.2d 758]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [60 Cal.Rptr.2d 780] [failure to raise issue at trial waives that issue]; *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317] [failure to raise issue on appeal constitutes waiver]; *Locke v. Warner Bros., Inc.* (1997) 57 Cal.App.4th 354, 368 [66 Cal.Rptr.2d 921] [failure to raise issue in opening brief waives issue on appeal].)

That the issue is one of preemption does not preclude the waiver doctrine in this case. A party may waive the application of preemption when the issue concerns whether the choice of federal or state law applies rather than the issue of subject matter jurisdiction. (*Hughes v. Blue Cross of Northern California* (1989) 215 Cal.App.3d 832, 851 [263 Cal.Rptr. 850] (*Hughes*); *Gilchrist v. Jim Slemons Imports, Inc.* (9th Cir. 1986) 803 F.2d 1488, 1497 (*Gilchrist*).) Here, the issue involves a determination as to which law applies—the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA) or state law provisions applicable to arbitrations. Because the parties failed to present or argue this choice-of-law question before the trial court, the preemption issue was waived. (*Hughes, supra,* 215 Cal.App.3d at p. 851; *Gilchrist, supra,* 803 F.2d at p. 1497.)

I agree with the majority that we need not reach the issue of whether in this case the arbitration agreement complies with California law governing arbitrations because the parties here did not enter into a contract to arbitrate. That is all the more reason why this court should not have opined on preemption.

In determining that the FAA rather than California law governed, this court did not consider the choice-of-law provision in the agreement in issue that

designated California law as controlling. This provision may have an impact on whether or not federal law preempts state law. The California Supreme Court has granted review in *Cronus Investments, Inc. v. Concierge Services, LLC*, review granted July 16, 2003, S116288, in a case involving the impact of a California choice-of-law clause on the application of the FAA. Whether a choice-of-law provision constitutes on agreement to apply California law to determine the enforceability of an arbitration provision may depend on the scope and terms of the arbitration agreement itself. (See *Warren-Guthrie v. Health Net* (2000) 84 Cal.App.4th 804, 815–816 [101 Cal.Rptr.2d 260] [contract stating "[a]ll Arbitration shall be conducted in accordance with the California Code of Civil Procedure, commencing with Section 1280" did not constitute agreement that enforceability of arbitration agreement would be determined by California law absent "express language indicating that California law shall . . . apply for all purposes"]; *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 724 [124 Cal.Rptr.2d 607] [choice-of-law analysis is a two-step inquiry; first, whether choice-of-law clause is broad enough to include state law on the subject of arbitrability; second, whether particular provision of state law in question is contrary to purposes of the FAA]; see also *Volt Information Sciences, Inc. v. Board of Trustees* (1989) 489 U.S. 468, 470 [103 L.Ed.2d 488, 109 S.Ct. 1248]; *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 55–56 [131 L.Ed.2d 76, 115 S.Ct. 1212].)

Another reason to have avoided the preemption issue is that the parties did not establish a factual record sufficient to find preemption. (Compare *Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205, 1214 [120 Cal.Rptr.2d 328] [evidence of interstate commerce included declarations regarding builder's contracts with out-of-state subcontractors, communications by interstate mail and national advertising] with *Steele v. Collagen Corp.* (1997) 54 Cal.App.4th 1474, 1490 [63 Cal.Rptr.2d 879] [facts insufficient to establish preemption when party made no attempt to establish that its actions fell within ambit of federal statute].) The majority rely on the document in which the buyer checks off a box labeled "FHA" with regard to the financing. But there is no evidence concerning the actual financing and whether there was a loan insured by the Federal Housing Administration. The majority also rely on the form used. The form itself, which is approved by the California Association of Realtors and contains that organization's logo, states that the "form is available for use by the entire real estate industry." The sole reference in the form to a national organization is the statement that only a member of the National Association of Realtors may use the registered mark REALTOR (R). Based on this factual record, I find it difficult to see a sufficient connection between the transaction and interstate commerce so as to result in the FAA preempting state arbitration law in this case.

The evisceration of state law requires that the issue be necessary to the decision and be based on a more developed record. I concur in the result affirming the trial court's order denying the petition to arbitrate.