Filed 5/15/24; modified and certified for publication 6/11/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CARLOS RAMIREZ, | F086371 |
| Plaintiff and Respondent, | (Super. Ct. No. BCV-22-102808) |
| v. | |
| GOLDEN QUEEN MINING COMPANY, LLC, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County. David R. Zulfa, Judge.

Belden Blaine Raytis, T. Scott Belden, Kaleb L. Judy and Tyler D. Anthony for Defendant and Appellant.

Bibiyan Law Group, David D. Bibiyan and Henry G. Glitz for Plaintiff and Respondent.

-ooOoo-

Carlos Ramirez filed a class action lawsuit against his former employer alleging various violations of the Labor Code and unfair competition. The employer moved to compel arbitration. The trial court denied the motion on the ground that the employer failed to demonstrate the existence of an executed arbitration agreement. The employer

appealed, contending it carried the initial burden of making a prima facie showing that a written arbitration agreement existed. The employer also contended Ramirez's statements that he did not recall being presented with or signing an arbitration agreement were insufficient to rebut its initial showing and create a factual dispute about the authenticity of a handwritten signature.

There is a split of authority among the Courts of Appeal as to what constitutes sufficient evidence to create a factual dispute about the authenticity of a handwritten signature on a document agreeing to arbitration. (Cf. *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 757–758 (*Iyere*) with *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164–165 (*Gamboa*).) We join *Iyere* in concluding that an individual is capable of recognizing his or her handwritten signature and if that individual does not deny a handwritten signature is his or her own, that person's failure to remember signing the document does not create a factual dispute about the signature's authenticity. (*Iyere*, *supra*, at p. 757.)

Here, Ramirez's declaration asserts he does not recall ever being presented with or signing an arbitration agreement. The declaration, however, omits several significant facts. First, the declaration fails to state whether Ramirez even reviewed the arbitration agreement, the related handbook acknowledgement, or any other documents purportedly signed by him and included in the employer's moving papers. A review of those documents, the handwritten signatures, and the handwritten initials might have improved Ramirez's recollection. Second, the declaration does not address whether Ramirez recalled signing *the handbook acknowledgement*, which is the document relied upon by the employer to show his consent to arbitration. The acknowledgement included a bolded, underlined sentence stating he agreed to the terms of the arbitration agreement in the employee handbook. Third, Ramirez's declaration does not state, one way or the other, whether the handwritten signature on the handbook acknowledgement is his.

2.

Based on these omissions, we conclude Ramirez did not rebut the employer's initial showing that an arbitration agreement existed.

We therefore reverse the order denying the motion to compel arbitration and remand for further proceedings to address Ramirez's unconscionability defense.

## FACTS

Appellant Golden Queen Mining Company, LLC (Queen Mining) is a California limited liability company that operates the Soledad Mountain gold and silver mine in Mojave, California. The open-pit mine operates 24 hours per day, 365 days per year. Queen Mining's operations use equipment, explosives and chemicals obtained from sources outside California. All the gold and silver recovered from the crushed ore is sold to a refinery outside of California. Based on its purchases and sales, Queen Mining contends its business operations involve interstate commerce and, therefore, the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) governs its arbitration agreements.

In March 2019, Ramirez was hired by Queen Mining as a nonexempt hourly employee to perform electrical work. Ramirez's employment ended in August 2022. As part of Queen Mining's onboarding process, new employees are provided with many documents including an employee handbook containing an arbitration agreement. The documents allegedly provided to Ramirez are described below.

## PROCEEDINGS

In October 2022, Ramirez filed a class action complaint against Queen Mining alleging causes of action for failure to pay overtime wages, pay minimum wages, provide meal periods, provide rest periods, pay all wages due upon termination, provide accurate wage statements, indemnify employees for expenses incurred in performing their jobs, and pay for vested, unused vacation time upon termination.

*Motion to Compel*

In April 2023, Queen Mining filed a motion to compel arbitration and supporting declarations. The declaration of Latasha Marshall, Queen Mining's human resources

3.

manager, asserted Ramirez "signed an 'Arbitration Agreement' on or about March 28, 2019." Marshall attached as exhibits to her declaration copies of (1) a two-page arbitration agreement, (2) a handbook acknowledgement purportedly signed by Ramirez and dated March 28, 2019, and (3) six other documents purportedly signed by Ramirez and dated March 28, 2019.

*Opposition*

Ramirez opposed the motion, contending that Queen Mining could not prove the existence of an arbitration agreement between the parties because (1) Queen Mining had failed to authenticate the proffered arbitration agreement and (2) even if authentic, a signature on an employee handbook acknowledgement did not constitute valid assent to arbitration. Alternatively, Ramirez argued any such agreement was unenforceable because it was procedurally and substantively unconscionable.

Ramirez's declaration in support of his opposition to the motion to compel is relatively short and, therefore, to accurately describe his evidence, we quote the declaration's last six numbered paragraphs:

> "3. In or around March 2019, I was hired by [Queen Mining] to work as a non-exempt hourly employee. My duties included electrical work.
>
> "4. I do not recall ever being presented with an arbitration agreement, either in person or electronically.
>
> "5. I do not recall ever signing an arbitration agreement for [Queen Mining], either on paper or electronically.
>
> "6. Nobody ever informed me about an arbitration agreement, a desire for me to sign an arbitration agreement, or explained to me what an arbitration agreement is.
>
> "7. Until my counsel explained it to me, I did not know what arbitration was. If someone had explained to me what an arbitration agreement was, I would not sign it.

4.

"8. As I do not recall ever being provided with or signing an arbitration agreement, I do not believe the Court should consider any such claim or document offered by [Queen Mining] to be genuine."

Ramirez's opposition papers also included evidentiary objections to the statement in Marshall's declaration that he "signed an 'Arbitration Agreement' on or about March 28, 2019." Ramirez argued (1) the assertion lacked foundation and was not supported by required preliminary facts; (2) Marshall lacked personal knowledge and had made an improper factual conclusion; and (3) the assertion was an improper legal conclusion in that Ramirez never signed an arbitration agreement and only purportedly signed an acknowledgement of the employee handbook.

*Reply*

Queen Mining's reply papers argued Ramirez's employment as an electrical worker, which involved keeping the mine's electrical power distribution systems connected to the electrical grid, involved or affected interstate commerce and, thus, the FAA applied. Queen Mining asserted that because Ramirez did not deny signing the "HANDBOOK ACKNOWLEDGEMENT," which contains a bolded, underlined sentence stating he agreed to the terms of the arbitration agreement, the burden did not shift back to it to authenticate his signature. Queen Mining's reply was supported with Marshall's supplemental declaration, which included a complete copy of Queen Mining's "Employee Information & Handbook" as an attachment. The arbitration agreement is set forth on pages 30 and 31 of the handbook. Queen Mining argued Ramirez's signature on the handbook acknowledgement was sufficient to establish his assent to the arbitration agreement contained in the handbook. Addressing Ramirez's defense to enforcement, Queen Mining asserted the arbitration agreement was neither procedurally nor substantively unconscionable.

*Hearing and Decision*

In May 2023, the trial court heard the motion to compel arbitration. At the beginning of the hearing, the court announced its tentative decision to deny the motion

based on a finding that Queen Mining failed to demonstrate the existence of an executed arbitration agreement. Counsel for Queen Mining argued *Iyere*, *supra*, 87 Cal.App.5th 747, was directly on point and established Ramirez's statement that he did not recall signing the arbitration agreement was insufficient to rebut Queen Mining's initial showing. Counsel for Ramirez argued that nothing in *Iyere* should cause the court to reverse its tentative. After hearing from counsel, the trial court took the matter under submission and stated it would reread *Iyere*.

The trial court's subsequent written ruling denied the motion, repeating the tentative decision's finding that Queen Mining "has failed to demonstrate the existence of an executed arbitration agreement." The ruling stated the court believed the separate arbitration agreement at issue in *Iyere* was distinguishable from the arbitration provision included in Queen Mining's more comprehensive employee handbook and, thus, the court viewed *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781 as more persuasive.[1] The court also sustained Ramirez's evidentiary objections to Marshall's factual assertion that Ramirez "signed an 'Arbitration Agreement' on or about March 28, 2019."

Counsel for Ramirez prepared a proposed order denying the motion to compel arbitration. On May 26, 2023, the trial court signed and filed the order.

*Appeal*

In June 2023, Queen Mining filed an appeal. About two weeks later, Queen Mining's attorney filed a mandatory Judicial Council form APP-004, Civil Case Information Statement. (See Cal. Rules of Court, rule 8.100(g) [appellant must serve and file a *completed* form APP-004].) Form APP-004, Part II, item 2 contains a box followed by "This appeal is entitled to calendar preference/priority on appeal (*cite authority*):" This item was left blank by Queen Mining's attorney. In a properly completed form, the

---

[1] Unlike this case, the acknowledgement signed in *Esparza* did not mention the arbitration agreement contained in the employee handbook. (*Esparza*, *supra*, at p. 785.)

box would have been marked and Code of Civil Procedure section 1291.2 would have been cited. That section provides that hearings in all proceedings brought under the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) shall have preference over all other civil proceedings so that the arbitration "proceedings shall be quickly heard and determined." (See *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 204, fn. 4 ["Arbitration proceedings are entitled to calendar preference in all courts"]; *Hedges v. Carrigan* (2004) 117 Cal.App.4th 578, 582.) The attorney's misstatement of law was repeated in October 2023 when he filed an application for extension of time to file the appellant's opening brief that stated: "(6) This case is not entitled to priority." (See Bus. & Prof. Code, § 6068, subd. (d); Rules Prof. Conduct, rule 3.3(a)(1).)

## DISCUSSION

I.      ESTABLISHING THE EXISTENCE OF AN ARBITRATION AGREEMENT

When presented with a motion or petition to compel arbitration, a trial court must determine whether an "agreement to arbitrate the controversy exists." (Code Civ. Proc., § 1281.2; *Iyere, supra,* 87 Cal.App.5th at p. 754.) The court makes this determination in a "summary proceeding" (Code Civ. Proc., § 1290.2), sitting "as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

The party seeking arbitration has the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1106.) The agreement must be in writing to be valid and enforceable. (Code Civ. Proc., § 1281.)[2] The party opposing

---

[2]     A written arbitration agreement does not necessarily need to be signed because "a party's acceptance may be implied in fact [citation] or be effectuated by delegated consent [citation]." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); see *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 422 [employee of 12 years impliedly agreed to arbitration by

arbitration bears the burden of proving by a preponderance of the evidence any defense to the agreement's enforcement. (*Nielsen, supra,* at p. 1106.) Whether the arbitration agreement is a legally enforceable contract is determined by applying general principles of California contract law. (*Ibid.*)

Although the party seeking arbitration bears the ultimate burden of proof as to the existence of an arbitration agreement, the burden of producing evidence on the issue may shift pursuant to a three-step process recognized by California courts. (*Iyere, supra,* 87 Cal.App.5th at p. 755; *Gamboa, supra,* 72 Cal.App.5th at pp. 164–165.) The first step requires the party seeking arbitration to carry the initial burden of presenting prima facie evidence of a written agreement to arbitrate the controversy. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*); *Gamboa, supra,* at p. 165.) If that initial burden is met, the second step requires the party opposing arbitration to carry the burden of producing evidence to challenge the authenticity of the agreement. (*Gamboa, supra,* at p. 165.) If the opposing party meets the burden of producing sufficient evidence, the third step requires the party seeking arbitration to prove by a preponderance of the evidence that the parties formed a valid contract to arbitrate their dispute. (*Id.* at pp. 165–166.)

---

continuing to work after employer announced arbitration of employee disputes would be mandatory].) Also, a signature manifesting assent to arbitration need not be on the arbitration agreement itself. (See *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1205, 1212 [when hired, plaintiff signed a certificate acknowledging receipt of a personnel handbook stating she had read and agreed to submit disputes arising out of her employment as described in the arbitration section of the handbook; appellate court concluded the agreement was enforceable].)

A. Step One: Initial Showing

   1. *Basic Principles*

How a party seeking arbitration makes the initial prima facie showing that an arbitration agreement exists is addressed in California Rules of Court, rule 3.1330 (Rule 3.1330):

> "A petition to compel arbitration or to stay proceedings pursuant to Code of Civil Procedure sections 1281.2 and 1281.4 must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration. The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference."

Thus, a party seeking arbitration can carry its initial burden " 'by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature.' " (*Iyere*, *supra*, 87 Cal.App.5th at p. 755, quoting *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*).) The party seeking arbitration "need not 'follow the normal procedures of document authentication' and need only 'allege the existence of an agreement and support the allegation as provided in rule [3.1330].' " (*Iyere*, *supra*, at p. 755, quoting *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218.)

   2. *The Evidence Produced*

Queen Mining's motion to compel arbitration alleged Ramirez signed an acknowledgement of an arbitration agreement on or about March 28, 2019. The motion was supported with Marshall's declaration, which asserted (1) Ramirez was employed by Queen Mining from approximately 2019 to August 2021; (2) she was a custodian of records for Queen Mining; (3) Queen Mining keeps personnel files that contain documents made in the regular course of its business, such as employee applications, write-ups, and documents noting the dates an employee is hired or terminated; (4) Queen Mining kept a personnel file for Ramirez; (5) Ramirez signed an arbitration agreement on or about March 28, 2019; and (6) true and correct copies of the arbitration agreement, the

9.

acknowledgement of the arbitration agreement signed by Ramirez, and other documents signed by Ramirez were attached as exhibits to the declaration.

The arbitration agreement stated that, "[i]n the event of any dispute arising under or involving any provision of this Agreement … or any dispute regarding employee's employment, … employee and Company agree to submit any such dispute to binding arbitration pursuant to the provisions of the Federal Arbitration Act[.]" The two-page arbitration agreement attached to Marshall's declaration did not contain a signature block and was not signed or initialed. The "HANDBOOK ACKNOWLEDGEMENT" attached to Marshall's declaration included the following:

> "**My signature also acknowledges and certifies that I understand and voluntarily agree to terms of the Company Arbitration Agreement.**
>
> "Furthermore, I understand that, because the Company cannot anticipate every issue that may arise during my employment, if I have any questions regarding the contents of the Handbook, I should consult Human Resources.
>
> "I have carefully read this Acknowledgement."

Immediately below these three paragraphs were blank lines for an employee number, position, name, signature, and date. The first three blanks were completed by hand in blue ink with "452," "Electrical II," and "Carlos Ramirez." The signature line appears to contain a signature for "Carlos Ramirez" in cursive handwriting and the date line contains a handwritten "3-28-19."

Another document attached to Marshall's declaration was a "NEW HIRE ORIENTATION CHECKLIST." The checklist's left-hand column contains 19 items under a heading stating "I have filled out and returned the following to HR." The initials "CR" are handwritten in blue ink next to 18 of the items, including "Arbitration Agreement" and "Handbook Acknowledgement." The checklist's right-hand column contains 14 items under a heading stating "I acknowledge receipt of the following." All 14 items have the handwritten initials "CR" next to them. The items include "Arbitration

10.

Agreement," "Corporate Governance," and "Employee Handbook."  The employee signature line at the bottom of the checklist appears to contain Ramirez's handwritten signature and is dated "3-28-19."

The attachments to Marshall's declaration also include five other documents appearing to contain Ramirez's handwritten signature along with the "3-28-19" date. These entries are handwritten in blue ink that appears to match the ink used for the signature on the handbook acknowledgement and the signature and initials on the checklist.

### 3. The Prima Facie Showing Was Made

We conclude as a matter of law that Queen Mining carried its initial burden and made a prima facie showing of the existence of a written arbitration agreement.  Queen Mining alleged the existence of an agreement and supported that allegation by complying with Rule 3.1330.  (*Iyere*, *supra*, 87 Cal.App.5th at p. 755.)  As a result, the burden of producing evidence shifted to Ramirez.

### B. Step Two:  Rebutting the Initial Showing

When the burden has shifted to the party opposing arbitration, that party must "identify a factual dispute as to the agreement's existence" and must present admissible evidence to support the existence of that factual dispute.  (*Iyere*, *supra*, 87 Cal.App.5th at p. 755.)  For example, if a party disputes the authenticity of his or her signatures, the party "must offer admissible evidence creating a factual dispute as to the authenticity of the[] signatures.  The opponent need not *prove* that his or her purported signature is not authentic, but must submit *sufficient evidence to create a factual dispute* and shift the burden back to the arbitration proponent, who retains the ultimate burden of proving, by a preponderance of the evidence, the authenticity of the signature."  (*Ibid.*, first italics in original, second italics added.)  We next describe the split of authority among the Courts

11.

of Appeal on the question of what constitutes sufficient evidence to create a factual dispute about the authenticity of handwritten signatures.

### 1. The Split in Authority

In *Gamboa*, an employee injured her hand at work and was terminated after she requested a medical accommodation. The employee sued her former employer for discrimination, retaliation, and failure to provide reasonable accommodation. (*Gamboa*, *supra*, 72 Cal.App.5th at p. 163.) The employer filed a motion to compel arbitration that alleged the employee had signed an arbitration agreement as part of her required onboarding documents. (*Ibid*.) The employee's opposition to the motion included her declaration, which stated (1) she had reviewed the arbitration agreement included in the employer's moving papers, (2) she did " 'not remember these documents at all,' " (3) no one had ever told her about an arbitration agreement or explained it until after her lawsuit began, and (4) " '[h]ad I been made aware of the existence of an arbitration agreement, and been explained its provisions, I would not have signed any such documents.' " (*Id*. at pp. 163, 167.) The trial court denied the motion to compel arbitration. (*Id*. at p. 164.) The Second District, Division Seven, affirmed. (*Id*. at p. 171.) The court addressed whether the employee's evidence was sufficient to satisfy her burden at step two by stating: "[W]e need not decide whether Gamboa challenged the authenticity of her purported signature on the arbitration agreement. It was enough that she challenged the authenticity of the agreement by saying under penalty of perjury that she did not remember it." (*Id*. at p. 168.)

In *Iyere*, three employees who had been terminated by their employer filed a joint complaint alleging many employment-related causes of action. (*Iyere*, *supra*, 87 Cal.App.5th at p. 752.) The employer filed a motion to sever the complaints and compel each plaintiff to submit his claims to individual arbitration. (*Ibid*.) The trial court denied the motion, concluding the employer failed to prove the authenticity of the

12.

plaintiffs' signatures on the arbitration agreements and the agreements were procedurally and substantively unconscionable. (*Id*. at p. 754.) The First District, Division Four, reversed and remanded the matter with directions to grant the employer's motion. (*Id*. at pp. 761–762.)

The First District addressed whether the "plaintiffs' evidence was sufficient to create a factual dispute shifting the burden of production back to" the employer. (*Iyere*, *supra*, 87 Cal.App.5th at p. 756.) The court stated the question was one of law and subject to de novo review. (*Id*. at p. 755.) The employer's moving papers included copies of arbitration agreements bearing the plaintiffs' apparent handwritten signatures. The plaintiffs' opposition papers included each plaintiff's declaration stating that, on the first day of work, he (1) was given a stack of documents, (2) was told to quickly sign the documents so he could get to work, and (3) signed the stack of documents immediately and returned them. (*Id*. at p. 756.) Each declaration also stated: " 'I do not recall ever reading or signing any document entitled Binding Arbitration Agreement …. I do not know how my signature was placed on [the document].' " Each plaintiff further stated that if he had understood that the agreement waived his right to sue the employer, he would not have signed it. (*Ibid*.)

The First District concluded the declarations did not create a factual dispute as to whether the plaintiffs signed the agreements, stating:

> "The declarations explicitly acknowledge that plaintiffs signed a 'stack of documents' and do not deny that the stack included the agreement. Although plaintiffs state they do not recall signing the agreement, there is no conflict between their having signed a document on which their handwritten signature appears and, two years later, being unable to recall doing so. In the absence of any evidence that their purported signatures were not their own, there was no evidence that plaintiffs did not in fact sign the agreement." (*Iyere*, *supra*, 87 Cal.App.5th at p. 756.)

The First District distinguished cases involving a plaintiff's statement that he or she did not recall *electronically* signing an arbitration agreement because "the

13.

individual's inability to recall signing electronically may reasonably be regarded as evidence that the person did not do so. However, an individual is capable of recognizing his or her own personal signature. If the individual does not deny that the handwritten personal signature is his or her own, that person's failure to remember signing is of little or no significance." (*Iyere*, *supra*, 87 Cal.App.5th at p. 757.)

The First District acknowledged that the court in *Gamboa* had reached a different conclusion about the inability to remember signing an agreement by hand and disagreed with *Gamboa*'s conclusion. (*Iyere*, *supra*, 87 Cal.App.5th at p. 758.) The First District addressed the rationale in *Gamboa* that treated electronic signatures and handwritten signatures "as 'a distinction without a legal difference' because 'electronic and handwritten signatures have the same legal effect and are equally enforceable.' [Citations.]" (*Iyere*, *supra*, at p. 758.) The First District rejected that reasoning because "there is a considerable difference between the evidence needed to authenticate the two." (*Ibid*.)

Consequently, in *Iyere*, the First District concluded that, if a plaintiff presented with a handwritten signature on an arbitration agreement is unable to allege the signature is inauthentic or forged, the plaintiff's failure to recall signing the agreement "neither creates a factual dispute as to the signature's authenticity nor affords an independent basis to find that a contract was not formed." (*Iyere, supra,* 87 Cal.App.5th at p. 758.) We agree with this conclusion and the underlying rationale. Thus, we join the federal district court in *Prostek v. Lincare Inc.* (E.D. Cal. 2023) 662 F.Supp.3d 1100 in following *Iyere* and rejecting *Gamboa*. (*Prostek*, *supra*, at p. 1114.)

        2.     *Ramirez's Evidence Did Not Carry His Burden*

Having chosen which principles of law should govern the evidence needed to carry the second step of the burden-shifting framework, we next consider how those principles apply to the evidence presented in this case. Stated in broad terms, the issue

presented is whether Ramirez produced sufficient evidence to create a factual dispute about the existence of an enforceable arbitration agreement and, as a result, shifted the burden of production back to Queen Mining. (See *Iyere*, *supra*, 87 Cal.App.5th at p. 756.) Stated in more specific terms, the issue is whether Ramirez's evidence created a factual dispute as to the authenticity of the signature on the "HANDBOOK ACKNOWLEDGEMENT," which included a bolded, underlined sentence stating he agreed to the terms of the arbitration agreement. If the answer to that question is "no," then the question becomes whether Ramirez's evidence created a factual dispute on an alternate ground that would lead to the conclusion the parties did not form a contract to arbitrate their disputes. (See generally, Civ. Code, §§ 1550 [essential elements of contract formation], 1565 [essentials of consent to a contract].)

Because Ramirez had the burden of producing evidence, we describe some seemingly obvious points that are omitted from his declaration. First, unlike Gamboa's declaration in support of her opposition, Ramirez's declaration did not state he reviewed the arbitration agreement and other documents attached to Marshall's declaration. The idea that a witness's inspection of a writing may refresh the witness's memory is long established. (See Evid. Code, § 771 [production of writing used to refresh memory].) Here, Ramirez's evidence does not allow this court to discern whether he took the fundamental step of inspecting the arbitration agreement included in Queen Mining's moving papers. It follows that his evidence leaves us wondering whether such an inspection would have improved his ability to recall being presented with the arbitration agreement and related acknowledgement.

Second, Ramirez's declaration did not state he examined any of the seven handwritten signatures on the documents that Queen Mining contended he purportedly signed. Similarly, he did not state whether he examined the 32 sets of the initials "CR" that were handwritten on the checklist included in Queen Mining's moving papers. As a

15.

result, Ramirez's declaration did not address whether the signatures or initials were inauthentic or forged.

Third, Ramirez's declaration did not state he did not recall signing the "HANDBOOK ACKNOWLEDGEMENT," which is the specific document relied upon by Queen Mining to manifest Ramirez's assent to arbitration. The distinction between a signed arbitration agreement and a signed acknowledgement is significant in the context of this case because Ramirez's opposition papers explicitly raised that distinction. For instance, one of the grounds asserted in his objection to the statement in Marshall's declaration asserting he "signed an 'Arbitration Agreement' on or about March 28, 2019," was that Ramirez never signed an arbitration agreement and only purportedly signed an acknowledgement of the employee handbook. Thus, the wording of Ramirez's declaration leaves open the possibility that he does recall signing the acknowledgement.

Having identified some of Ramirez's omissions, we next consider the evidence Ramirez actually presented to carry his second-step burden of producing evidence. Ramirez's declaration stated (1) he did "not recall ever being presented with an arbitration agreement,"[3] (2) he did "not recall ever signing an arbitration agreement," (3) no one informed him about an arbitration agreement, informed him of a desire that he sign an arbitration agreement, or explained to him what an arbitration agreement was, and (4) if someone had explained to him what an arbitration agreement was, he would not sign it.

Our evaluation of Ramirez's evidence begins with whether he offered sufficient evidence to create a factual dispute about the *authenticity of his signature* on the

---

[3]     Read literally, Ramirez's broad representation that he does not recall *ever* being presented with an arbitration agreement implies either that his attorney did not have Ramirez review the arbitration agreement in Queen Mining's moving papers before signing the declaration or that Ramirez did review the arbitration agreement but, due to a poor memory or some other reason, he could not recall it by the time he signed the declaration.

16.

"HANDBOOK ACKNOWLEDGEMENT." His declaration does not assert the signature on that document is not his and, furthermore, does not even state that he cannot recall signing that particular document. Consequently, we conclude Ramirez, like the plaintiffs in *Iyere*, has offered no admissible evidence creating a dispute as to the authenticity of the handwritten signature on the acknowledgement. (See *Iyere*, 87 Cal.App.5th at pp. 756–757.)

We next evaluate whether the evidence offered by Ramirez creates a factual dispute about whether the parties formed an enforceable contract to arbitrate their employment-related disputes. As concluded by the First District, the inability to recall signing a document does not "afford[] an independent basis to find that a contract was not formed." (*Iyere*, *supra*, 87 Cal.App.5th at p. 758.)

Consequently, the burden of producing evidence never shifted back to Queen Mining. Based on Ramirez's failure to carry his second step burden, the trial court should never have reached the third step in the burden-shifting framework. After concluding an arbitration agreement existed, the trial court should have addressed whether Ramirez had proven by a preponderance of the evidence that the agreement was unconscionable and, thus, not enforceable. (See *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, *supra*, 22 Cal.App.5th at p. 1106 [party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense to the agreement's enforcement].)

II.     REMAND FOR FURTHER PROCEEDINGS

Ordinarily, a trial court is required to rule on the gateway issues of whether an arbitration agreement is enforceable, which includes claims of unconscionability. (*Balandran v. Labor Ready, Inc.* (2004) 124 Cal.App.4th 1522, 1530.) Here, the trial court did not reach Ramirez's unconscionability defense and, therefore, it is appropriate to remand for further proceedings addressing that defense. (*Ibid*.)

17.

## DISPOSITION

The order denying the motion to compel arbitration is reversed. The matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5); see Cal. Rules of Court, rule 8.100(g).)


FRANSON, J.

WE CONCUR:


LEVY, Acting P. J.


POOCHIGIAN, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CARLOS RAMIREZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GOLDEN QUEEN MINING COMPANY, LLC, <br><br> Defendant and Appellant. | F086371 <br><br> (Super. Ct. No. BCV-22-102808) <br><br> **ORDER MODIFYING OPINION AND GRANTING PUBLICATION REQUEST [NO CHANGE IN JUDGMENT]** |

THE COURT:

As the nonpublished opinion filed on May 15, 2024, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified, in its entirety, for publication in the Official Reports with the following modifications:

1.  On page 2, first full paragraph, second sentence, the phrase "review den. Apr. 26, 2023, S278817" is added immediately following the short cite "(*Iyere*)" so the citation now reads: "(Cf. *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 757–758 (*Iyere*) review den. Apr. 26, 2023, S278817 …."

2.  On page 3, last paragraph of the "**FACTS**", the word "below" of the last sentence is deleted and replaced with "in part I.A.2. of this opinion", so the sentence now reads:

> "The documents allegedly provided to Ramirez are described in part I.A.2. of this opinion."

3. On page 3, the paragraph under the heading "*Motion to Compel*" the word "a" following "(1)" is deleted and replaced with the words "an unsigned" so the sentence now reads:

> "Marshall attached as exhibits to her declaration copies of (1) an unsigned two-page arbitration agreement …."

4. On page 5, the first sentence of the first paragraph, the word "inaccurate" is added in between the words "the" and "statement", so the sentence now reads:

> "Ramirez's opposition papers also included evidentiary objections to the inaccurate statement in Marshall's declaration that he "signed an 'Arbitration Agreement' on or about March 28, 2019."

5. On page 14, footnote 3 is added after the citation "(*Prostek*, *supra*, at p. 1114.)" at the end of the paragraph beginning "Consequently, in *Iyere*," which will require renumbering of all subsequent footnotes:

> In *Garcia v. Stoneledge Furniture LLC* (May 17, 2024, A166785) 2024 Cal. App. LEXIS 314, at page 17*, the First District, Division Three, stated it "join[ed] the legion of courts that have concluded a denial of signing an arbitration agreement is sufficient to shift the burden" to the party seeking arbitration. The court cited *Gamboa* and referred to the cases collected therein. Because *Garcia* involved an arbitration agreement purportedly containing the plaintiff's electronic signature, we do not interpret it as impliedly rejecting *Iyere*'s conclusion about the evidence needed to create a factual dispute about the authenticity of a handwritten signature.

There is no change in judgment.

FRANSON, J.

WE CONCUR:

LEVY, Acting P. J.

POOCHIGIAN, J.